*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0067P (6th Cir.)
File Name: 04a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NORMA JEFFERSON,
　　　　*Plaintiff-Appellant,*


　　　*v.*

JEFFERSON COUNTY PUBLIC
SCHOOL SYSTEM; STEPHEN
DAESCHNER, Superintendent
for Jefferson County Public
School System; CAROLYN
MEREDITH, Director of
Employee Relations for
Jefferson County Public
School System; GEORGE
BELL, Director of Security
Services for Jefferson County
Public School System; MAXIE
JOHNSON, Principal of
Chenoweth Elementary
School,
　　　　*Defendants-Appellees.*

Nos. 02-5621/6038

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 00-00044—Jennifer B. Coffman, District Judge.

2　　*Jefferson v. Jefferson County*　　Nos. 02-5621/6038

Argued: December 4, 2003

Decided and Filed: March 4, 2004

Before: MERRITT, DAUGHTREY, and GIBBONS,
Circuit Judges.

_____

### COUNSEL

**ARGUED:** J. Key Schoen, SALES, TILLMAN &
WALBAUM, Louisville, Kentucky, for Appellant. Michael
Keith Kirk, WYATT, TARRANT & COMBS, Louisville,
Kentucky, for Appellees. **ON BRIEF:** J. Key Schoen,
SALES, TILLMAN & WALBAUM, Louisville, Kentucky,
for Appellant. Michael Keith Kirk, Byron E. Leet, WYATT,
TARRANT & COMBS, Louisville, Kentucky, for Appellees.

_____

### OPINION

_____

MERRITT, Circuit Judge. In this case brought under
42 U.S.C. § 1983,[1] plaintiff Norma Jefferson brought various
federal due process claims against a group of state defendants,
as well as defamation and other state law claims.[2] The

_____

[1]Although plaintiff's constitutional claims were brought under the
Fourteenth Amendment, Section 1983 provides the usual remedy for
constitutional violations by state officials and her complaint was
interpreted as an action under that statutory provision.

[2]Plaintiff brought suit in state court against the Jefferson County
Public School System, Superintendent Stephen Daeschner, Carolyn
Meredith, Director of Employee Relations for the school system, George
Bell, Director of Security Services, Lisa Qureshi, an assistant teacher, and

primary questions before us arise from three of her federal due process claims: (1) whether she received an appropriate predeprivation hearing before her five-day suspension and alleged constructive discharge from her position as a school teacher in the Louisville public school system; (2) whether she was deprived without due process of law of her constitutionally-protected property interest in her job; and (3) whether she was deprived of a substantive liberty interest – her asserted interest in her good name and reputation – without due process.[3] Plaintiff also has a pending arbitration proceeding arising under the collective bargaining agreement governing her employment with the Jefferson County Public School System.

We agree with the district court that before plaintiff was suspended and allegedly forced to retire she received an appropriate predeprivation, right-of-reply hearing that complies with the due process requirements for such hearings. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (before termination, a public employee with a property interest in continued employment should receive constitutionally adequate procedures, including "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" to ensure due process of law). In addition, we agree with the district court that plaintiff's procedural due process claim based on the deprivation of a property interest

---

Hearst-Argyle Productions, Inc., the owner of a Louisville television station. Defendants removed the action to federal court. The claims against Qureshi were remanded to state court and the television station has settled with plaintiff; those two defendants are not parties to this appeal.

[3]Plaintiff failed to include a copy of her complaint in the Joint Appendix. In addition to constituting a violation of the rules for filings in our circuit, 6th Cir. R. 30(f)(1)(B), the lack of a complaint made it difficult for this court to untangle plaintiff's multiple, overlapping claims and allegations.

---

in her job also fails because she has not shown that state remedies under Kentucky teacher tenure and breach of contract statutes and cases are inadequate or incapable of remedying the wrongs she alleges. Such a showing of defective state remedies is required in procedural due process cases like this one. *Hudson v. Palmer*, 468 U.S. 517 (1984);[4] *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1984).[5]

Finally, we agree with the district court that plaintiff's "liberty interest" due process claim for injury to reputation must be dismissed as well. As the Supreme Court made clear in *Paul v. Davis*, 424 U.S. 693, 708-09 (1976), there is no viable, free standing, federal due process claim arising from injury to one's reputation. Such a claim is viable only in

---

[4]In *Hudson*, the Supreme Court held that the

unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful [state] postdeprivation remedy for the loss is available.

468 U.S. at 533.

[5]In *Vicory*, a procedural due process case, we held as follows:

Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivation without procedural due process. Thus we hold that in § 1983 damage suits claiming the deprivation of a property interest without procedural due process, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under § 1983, the plaintiff must attack the state's corrective procedures as well as the substantive wrong.

721 F.2d at 1066.

combination with two other elements: "when there is some injury to employment . . . in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury." *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983). In the instant case, as the district court concluded, not only is there no showing that state remedies for defamation and improper discharge are inadequate, nonexistent or unfair, but plaintiff has pending claims in state court that have yet to be adjudicated and she may yet be able to bring other claims in state court that will adequately redress her injuries. In addition, she has an arbitration proceeding that has apparently been stayed pending the outcome of this litigation.

### I. Predeprivation Due Process

It is necessary to understand the basic facts and the district court's ruling on plaintiff's entitlement to a predeprivation hearing before addressing her procedural due process and liberty interest assignments of error. Plaintiff was a second- and third-grade teacher at Chenoweth Elementary School in the Jefferson County Public School District. On January 18, 1999, a group of parents with children in plaintiff's classroom met to discuss allegations of improper conduct brought to their attention by plaintiff's teaching assistant, Lisa Qureshi. At the meeting, the parents agreed to meet at the school the next day to confront school officials with their allegations. One of the parents alerted a local television station about their plans. The parents also contacted Kentucky Child Protective Services to report allegations of abuse. The next day, the parents met with Chenoweth principal, defendant Maxie Johnson, and accused plaintiff of misconduct in the classroom, including grabbing students by their arms or shirt collars, using curse words, allowing students to watch inappropriate television shows and allowing students to eat throughout the day. At the end of the meeting, several parents spoke with a local television reporter on camera.

After the meeting, Johnson contacted Child Protective Services about the allegations of child abuse and directed defendant George Bell, Jefferson County Public School's Director of Security Services, to investigate the allegations. Bell interviewed several students in plaintiff's class, their parents, and Lisa Qureshi, plaintiff's teaching assistant who had first made the complaints. On January 22, Bell met with Johnson, plaintiff and plaintiff's union representative, Ruby Fitzgerald, before any action was taken against her. At that hearing, plaintiff was verbally informed of the allegations against her and she submitted a written response denying all the allegations.

On January 27, 1999, Bell reported the results of his investigation to defendant Carolyn Meredith, the school system's Director of Employee Relations. Bell concluded that some, but not all, of the allegations against plaintiff were substantiated. On February 2, following review of Bell's report by the school district's Employee Practices Review Committee, plaintiff received a letter listing the specific improper conduct found by Bell's investigation and informing plaintiff that she would be suspended for five days without pay, starting the next day. The superintendent of the Jefferson County Public School System accepted Johnson's decision to suspend plaintiff and notified the Board of Education about the suspension as required.

On February 5, 1999, two days into her suspension, plaintiff and her union representative met with Carolyn Meredith and Minor Daniels, the Executive Director of Business Affairs, to discuss where plaintiff would be assigned following her suspension. Meredith presented plaintiff with a letter offering plaintiff a temporary assignment teaching language arts at a different school in the system and stating that she would be permanently reassigned the following school year. It is not disputed that, instead of signing the transfer letter, plaintiff submitted a letter at the end of the meeting stating "I, Norma J. Jefferson, am submitting this

letter of retirement which will go into effect at the end of the 1998-1999 contract year." Plaintiff claims that the retirement was coerced because she was forced to choose retirement because the transfer was an unacceptable alternative.

Kentucky Child Protective Services also conducted an investigation during the same time as Bell conducted his investigation to determine whether plaintiff abused her students. Students, their parents, school personnel and plaintiff were interviewed. Child Protective Services issued its report two months later exonerating plaintiff of any criminal child abuse claims. The report also stated that the agency's findings indicated that some of the students' comments were influenced by their parents and Qureshi. The report criticized Bell's investigation because (1) the parents were present when Bell interviewed the children, (2) the investigation lasted only a week, and (3) it relied too heavily on the opinions and uncorroborated hearsay of Qureshi and the complaining parents.

The collective bargaining agreement between the teachers' union and the school board grants plaintiff a property interest in continued pay and benefits because it provides that a teacher may only be suspended for "just cause." *See Loudermill*, 470 U.S. at 538-39. We will assume for purposes of this appeal that the five-day suspension without pay and coerced retirement constitute the deprivation of a property interest requiring a preloss hearing, which requires an opportunity to respond before any deprivation, as well as postdeprivation process where necessary. *Id.* at 542. If extensive postdeprivation procedures exist, as they do here, the predeprivation process need not be elaborate.

Plaintiff conceded at oral argument that the predeprivation hearing she received was adequate. She had notice of the charges against her and an opportunity to respond both orally and in writing, and she participated in at least one meeting with decisionmakers before her suspension. Plaintiff then had

the option of initiating a postdeprivation arbitration proceeding under the grievance procedures of the teachers' collective bargaining agreement or bringing an action in state court pursuant to the state teacher tenure statute, Ky. Rev. Stat. Ann. § 161.790, and common law tort and contract theories.

## II. Postdeprivation Procedural Due Process

If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury. *Hudson*, 468 U.S. at 533; *Vicory*, 721 F.2d at 1065-66 (in procedural due process cases claiming deprivation of property interest, plaintiff must attack the state's corrective procedure as well as the substantive wrong). Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds*, *Daniel v. Williams*, 474 U.S. 327 (1986); *Mansfield Apt. Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1475 (6th Cir. 1993). The plaintiff must prove the inadequacy of state remedies as an element of her constitutional tort. *See Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove *as an element* of that claim that state procedural remedies are inadequate." (emphasis added)).

Plaintiff had at least three options available to her once she received notice of the suspension: (1) proceed with the detailed grievance procedures set out in the collective bargaining agreement governing the terms of her employment; (2) bring suit in state court under Ky. Rev. Stat. Ann.§ 161.790, or (3) bring suit in state court for breach of the collective bargaining agreement.

The collective bargaining grievance procedures provide for several levels of review by school officials, culminating in the availability of an arbitration hearing conducted by a neutral arbitrator chosen by the parties. Once a teacher chooses the grievance process, she must exhaust that process before bringing an action in state court. The collective bargaining agreement does not prohibit a teacher from then pursuing an action in state court.

Section 161.790 sets out a detailed process and timetable for notification, reply and hearing procedures before and after a teacher has been terminated, suspended without pay or publicly reprimanded. Ky. Rev. Stat. Ann. § 161.790(3)-(10). Section 161.790(10) clearly states that the procedures set forth in subsections (3)-(9) are available to teachers who have been suspended without pay, such as plaintiff. The statute provides for the right to a hearing before an impartial tribunal, the right to have counsel present at the hearing and the right to present and question witnesses. The teacher has the right to appeal the tribunal's decision to the Circuit Court in the jurisdiction where the school district is located. Ky. Rev. Stat. Ann. § 161.790(3)-(7).

Plaintiff first chose to pursue the grievance process under the collective bargaining agreement. On February 11, 1999, plaintiff filed a "Level I" grievance with the Board of Education containing multiple claims for relief. The grievance was denied four days later by the principal, Maxie Johnson. Plaintiff then submitted a "Level II" grievance, which was denied on March 8, 1999, by the Director of Employee Relations, Carolyn Meredith, as the superintendent's designee. The union, with plaintiff's acquiescence, then requested that her grievance be submitted to arbitration.

The district court concluded that plaintiff failed to demonstrate the inadequacy of the panoply of remedies available to her, including arbitration and a postdeprivation

action in state court, whether brought as a common law breach of contract claim or under Section 161.790 of the Kentucky statutes. *Jefferson v. Jefferson County Bd. of Educ.*, 184 F. Supp. 2d 622, 625, *motion to amend or alter judgment granted in part and denied in part*, 196 F. Supp. 2d 515, 516-17 (W.D. Ky. 2002). We agree with the district court. Plaintiff offers no plausible explanation as to why these remedies are inadequate.

The fact that plaintiff was required, as an initial matter, to choose between proceeding under the terms of the collective bargaining agreement's grievance procedures or Section 161.790 of the Kentucky Revised Statutes does not make the state statute "unavailable" to her. Nothing in the collective bargaining agreement prevents a teacher from bringing an action under Section 161.790 at the conclusion of the grievance process. The collective bargaining agreement states that a teacher will not "be deemed to have waived or otherwise prejudiced" her rights by first seeking redress under the collective bargaining agreement.

### III. Liberty Interests

The plaintiff asserts no substantive due process claim under the incorporation doctrine based on violation of a specific provision of the First or any other amendment to the Constitution. Plaintiff simply recites a combination of facts that she claims constitutes a "substantive liberty interest" due process cause of action: (1) delay in her arbitration hearing; (2) defamation, and (3) forced retirement or constructive discharge.

Plaintiff first claims that defendants intentionally delayed her arbitration hearing. Plaintiff learned in December 1999 that the arbitration had been set for late January 2000. The hearing never occurred, however, because on January 5, 2000, plaintiff filed her complaint in Kentucky state court. Even though her arbitration was not completed, plaintiff claims she

had to file suit by that date to avoid statute of limitations problems. As a result of filing suit, the arbitration hearing was held in abeyance pursuant to an agreement signed by school system officials and her own union representative. Plaintiff claims that she did not agree to stay the hearing pending her lawsuit and that the stay was imposed in retaliation for filing a lawsuit. The school board and the union respond that plaintiff knew that it was standard procedure to hold these types of hearings in abeyance once a lawsuit is filed. Plaintiff's own union president testified that he told plaintiff's attorney before the suit was filed that filing a complaint would likely result in the hearing being held in abeyance.[6]

Second, plaintiff claims defamation as another element of her constitutional tort. The complaining parents had contacted the media and, after the February 5 meeting, Lauren Roberts, a spokesperson for the school system, described the allegations made against the plaintiff and stated that Bell's investigation had substantiated some of them. Roberts informed the media that plaintiff had been suspended for five days and stated that plaintiff had acted unprofessionally and inappropriately. Roberts also related to the media that eight students had been removed from plaintiff's classroom because of the alleged abuse. Plaintiff claims that the defendants' failure to give her a timely arbitration hearing stigmatized her,

---

[6]Before the motion for summary judgment was decided, plaintiff moved to compel the production of 112 teacher arbitration cases brought against the Jefferson Public School System between 1990 and 2002 for the purpose of demonstrating that her arbitration hearing had been intentionally delayed. A magistrate judge conceded the relevance of these documents to plaintiff's claim of delay and granted the motion with some restrictions. However, the district court judge granted summary judgment to defendants on the federal claims before the documents were produced and those documents were never produced. In light of our holding that plaintiff's claims fail as a matter of law, the appeal concerning the motion to compel is moot, as found by the district court.

harmed her reputation and caused her to be denied job opportunities in her chosen field. The "liberty" interest that plaintiff claims was abridged is, essentially, that her freedom to pursue her chosen profession under the same conditions under which she had been working was curtailed, in part through injury to her reputation caused by the false and stigmatizing publications. Assuming the combination of arbitration delay, defamation and job loss, the question is whether these facts constitute a valid liberty interest claim and, if so, whether plaintiff must show that her state remedies are inadequate.

In *Zinermon v. Burch*, 494 U.S. 113, 132 (1990), the Supreme Court said that "the fact that a deprivation of liberty is involved . . . does not automatically preclude application of the *Parratt* rule" requiring a showing that state remedies are inadequate. In *Zinermon*, the Court held that we should look to the *nature* of the deprivation complained of and the circumstances under which the deprivation occurred to determine whether the rule of *Parratt* applies to defeat a liberty interest claim. Subsequent to the Supreme Court's decision in *Zinermon*, we have held that *Zinermon's* extension of *Parratt* applies to some cases claiming deprivation of due process where liberty interests are concerned. *Wilson v. Beebe*, 770 F.2d 578 (6th Cir. 1985) (en banc) (arrestee brought suit against state police officer seeking damages under § 1983 and under pendent state claim of negligence and court held rule of *Parratt* applied to § 1983 suits alleging deprivation of a liberty interest); *see also Jackson v. City of Columbus*, 194 F.3d 737, 750 (6th Cir.1999) (police chief brought § 1983 claim against city arising from his suspension and investigation into alleged misconduct and court held that a deprivation of liberty interest based on damage to good name and reputation does not automatically preclude application of *Parratt* rule), *overruled on other grounds*, *Swierkiewicz v. Sorema NA*, 534 U.S. 506 (2002); *Bacon v. Patera*, 772 F.2d 259, 263-64 (6th Cir. 1985) (private investigator's liberty interest was infringed

by damage to reputation and resulting loss of employment due to police conduct, but remand necessary to ascertain adequacy of state law remedies). *Accord Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880-82 (2d Cir. 1996) (following *Parratt* and *Hudson*, due process rights held not violated where adequate postdeprivation remedy was provided by New York law for city contractor barred from bidding on government contracts resulting in injury to liberty interest in good name and reputation); *Birkenholz v. Sluyter*, 857 F.2d 1214, 1217 (8th Cir. 1988) (state statute provided nursing director found negligent in care of patients with adequate postdeprivation remedy to adjudicate any challenge to misconduct finding); *Econ. Dev. Corp. of Dade County, Inc. v. Stierheim*, 782 F.2d 952, 954-55 (11th Cir. 1986) (contractor § 1983 action against county and county employee for deprivation of due process rights arising from loss of contract and attendant statements made to press dismissed due to existence of adequate state remedies to redress injury); *In re Selcraig*, *supra*, 705 F.2d at 796 (discharged school official alleged due process violations for damage to reputation and employment and denial of name-clearing hearing).

Plaintiff has already filed multiple claims under the state's defamation law and pursued the grievance procedures under the collective bargaining agreement. She is pursuing actions in two other forums in addition to federal court. There is no showing that the remedies there are inadequate. Kentucky law provides plaintiff with a panoply of postdeprivation remedies sufficient to satisfy due process. The district court properly dismissed her claims of deprivation of property and liberty interests.

### IV. Costs

The district court ordered plaintiff to pay $5,239.90 as costs to the defendants. When reviewing an award of costs on appeal, we look first to whether the expenses are allowable

cost items and then to whether the amounts are reasonable and necessary. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Under Rule 54(d) of the Federal Rules of Civil Procedure, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." If authority exists to impose a cost, we reverse only for abuse of discretion. The district court awarded costs to the defendants for removal fees and witness fees, mileage reimbursement and copying materials related to depositions. Statutory authority exists for awarding all these costs under 28 U.S.C. § 1920.

Plaintiff argues that defendants cannot recover because they did not "prevail" on all their claims. We do not agree. Because all of plaintiff's federal claims have been dismissed, defendants are clearly the "prevailing party" in this action under Rule 54(d) and are entitled to the reasonable costs awarded by the district court.

For the foregoing reasons, the judgment of the district court is affirmed.